UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

BILL SCOTT,

Plaintiff,

v.

S.M. PEDERSON, ALAN PRATER, DANIEL CLARK, WILLIAM EARL, J. SHANAHAN and DANIEL McMAHAN,

Defendants.

---

CIVIL NO. 00-2053 (PAM/SRN)

REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Federal Correctional Institution, Sandstone, Minnesota, ("FCI-Sandstone"), has filed a complaint alleging that Defendants have violated his federal constitutional rights. The matter is presently before the undersigned Magistrate Judge for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1] For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a claim on which relief can be granted. It will therefore be recommended that this action be summarily dismissed pursuant to § 1915A(b).

---

[1] Plaintiff did not tender the required filing fee with his complaint, but instead filed an application seeking leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated September 6, 2000, (Docket No. 3), the Court advised Plaintiff that his IFP application would not be addressed, and his action could not proceed, unless he paid the initial partial filing fee required by 28 U.S.C. § 1915(b)(1). Plaintiff has now paid his initial partial filing fee, (Docket No. 4), and the matter is therefore ripe for initial screening pursuant to § 1915A.

FILED OCT 18 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Plaintiff alleges that on January 14, 2000, prison officials at FCI-Sandstone summoned him to an office and required him to provide a urine sample, presumably for drug-testing purposes. Even after drinking eight ounces of water, and trying to urinate for three hours, he was unable to fill the specimen container much beyond the half-way mark. Plaintiff tried to explain that he was unable to provide a greater specimen because of certain medications that he was taking. His explanation was rejected, however, and he was cited for violating prison rules by refusing to provide an adequate urine sample on demand.

At a prison disciplinary hearing, Plaintiff again tried to explain why he had been unable to fill the specimen cup. Furthermore, he now alleges, the urine sample that he did provide was tested, and the results were "negative." Nevertheless, Plaintiff was found guilty as charged, and he was punished for his alleged offense. He was required to spend thirty-four days in segregated confinement, and it appears that he also lost certain good time credit, and that he may have lost his prison job.

Plaintiff is now attempting to sue the prison officials at FCI-Sandstone who allegedly were involved in the urine testing incident and the disciplinary proceedings that followed it. Defendants Alan Prater, Daniel Clark, William Earl and J. Shanahan allegedly were responsible for the testing and/or the initiation of the disciplinary proceedings, and Defendants Daniel McMahon and S.M. Peterson allegedly were responsible for conducting and resolving the disciplinary proceedings. Plaintiff claims that Defendants violated his constitutional rights under the Fourteenth Amendment's due process clause, and under the Eighth Amendment's "cruel and unusual punishment" clause. His claims are brought under

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a right of action comparable to the one provided by 42 U.S.C. § 1983. See Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1990) ("[a]n action under Bivens is almost identical to an action under § 1983, except that the former is maintained against federal officials while the latter is against state officials"). Plaintiff is seeking "nominal damages" in the amount of one dollar from each of the six Defendants, plus punitive damages in the amount of one million dollars from each Defendant. He also seeks "to have the disciplinary action report expunged from [his] record, good time restored, job restored, and other harrassments [sic] discontinued."

**II. DISCUSSION**

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1). Here, the action must be dismissed in its entirety pursuant to § 1915A(b)(1), because Plaintiff has failed to state any claim on which relief can be granted.

While federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim

as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). In this case, Plaintiff's complaint does not include any factual allegations showing that Defendants violated his constitutional rights under either the Fourteenth Amendment or the Eighth Amendment.

**A. Due Process Claim**

To maintain an actionable Fourteenth Amendment due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). The only possible interests at issue in this case appear to be (i) Plaintiff's interest in remaining in the general prison population, as opposed to segregated confinement, (ii) his interest in keeping his prison job, and (iii) his interest in retaining his good time credits. While such matters are undoubtedly important to Plaintiff, they do not qualify as "liberty interests" that warrant the protections of due process.

A constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). There, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), our Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that

they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

Here, Plaintiff has not pleaded an actionable due process claim because he has presented no factual allegations suggesting that he has been subjected to the type of severe hardship that Sandin requires. Again, the only "hardships" that Plaintiff has pointed to are (1) his assignment to segregated confinement, (2) the loss of his prison job, and (3) a loss of good time credits. None of these purported "hardships," however, constitutes the type of dramatic departure from the ordinary conditions of prison life that was contemplated by the Supreme Court in Sandin.

**(i) Segregated confinement**

Sandin itself shows that a 30-day term of segregated confinement does not normally constitute the type of "atypical and significant hardship" that implicates a constitutionally protected liberty interest. In the present case, Plaintiff's term of segregated confinement was 34 days – just four days longer than the period at issue in Sandin. The Eighth Circuit has found that periods of segregated confinement much longer than 34 days do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim).[2] Case law from other jurisdictions

[2] Although Howard and Driscoll are unpublished opinions, they can properly be relied upon as precedential case law in actions decided within the Eighth Circuit. Anastasoff v. U.S., 223 F.3d 898 (8th Cir. 2000).

suggests that segregated confinement for as long as a full year will not support an actionable due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners").

Based on Sandin and the relevant case law following it, the Court concludes that Plaintiff's 34-day term of segregated confinement does not constitute the type of hardship that would implicate a protected liberty interest. It follows that Plaintiff was not entitled to the procedural protections of due process before being assigned to segregated confinement.[3]

---

[3] Even if Plaintiff had been entitled to due process, it appears that he would not have a viable Bivens claim, because the requirements of due process apparently were satisfied in this case. Plaintiff has clearly acknowledged that he received a hearing, and he has not identified any procedural deficiency in the hearing process. Plaintiff seems to be claiming that he was denied due process simply because the evidence allegedly does not support the outcome of the disciplinary proceeding. It must be borne in mind, however, that a decision reached in a prison disciplinary proceeding will be upheld against a due process challenge if there is at least "some evidence" to support it. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (emphasis added). In this case, it appears that there is at least "some evidence" to support the conclusion that Plaintiff violated prison rules by failing to provide a urine sample that met the prison's standards. If that is so, then the requirements of due process were, in fact, satisfied in this case.

**(ii) Prison job**

Plaintiff's loss of his prison job also is not a serious enough hardship to support an actionable due process claim. Prisoners are frequently denied employment opportunities for many different reasons, and such events are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). Thus, under the Sandin test, Plaintiff had no constitutionally protected liberty interest in retaining his prison job. It follows that he was not entitled to the procedural protections of due process before being removed from his job.

**(iii) Good time credits**

Finally, to the extent that Plaintiff's claims are based on a loss of good time credits, it is unnecessary to decide whether he suffered an actionable hardship, because such claims are barred in any event by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). There, the Court reiterated that a prisoner cannot challenge the fact or duration of his incarceration in a civil rights action. Habeas corpus is the exclusive federal remedy for a prisoner who is challenging the validity of his conviction or the length of his sentence. Id. at 481, citing Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973). Thus, even when a prisoner-plaintiff demands only money damages, he cannot bring a civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." Heck, 512 U.S. at 483.

> "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or

> sentence invalid..., a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."

Id. at 486-87 (footnote omitted). See also, Edwards v. Balisok, 520 U.S. 641 (1997); Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996).

In this case, it is readily apparent that a judgment for Plaintiff on his good time credit claim would necessarily imply the invalidity of his sentence. That is the very essence of the claim; he is contending that his sentence has been unlawfully extended by the number of days of good time credit lost to him as a result of the allegedly unconstitutional disciplinary sanctions imposed against him. Indeed, Plaintiff has expressly asked the Court to enter an order that would restore the good time credits he has lost, which would, in effect, expedite his release from prison. According to Heck, however, the length of Plaintiff's sentence is a subject that cannot be considered in a federal civil rights action, unless Plaintiff has already established in a proper forum -- i.e., a state or federal post-conviction proceeding -- that his release date should be moved up.

Moreover, even if Plaintiff were seeking only money damages for his loss of good time credits, he still could not bring a civil rights claim at this time, because a judgment in his favor on his due process/good time claim would necessarily raise doubts

about the validity of his current release date and the proper duration of his confinement. See Sheldon, 83 F.3d at 233 ("Heck requires favorable termination of the action in an authorized state tribunal or a federal habeas corpus court, even if the claim is for damages rather than earlier release"); see also, Edwards v. Balisok, supra.

In short, Plaintiff's claim based on his loss of good time credits is premature at best. He cannot maintain a civil lawsuit seeking damages, or injunctive relief, for actions that have resulted in an extension of his imprisonment, without first securing an order specifically invalidating the length of his sentence. In other words, he must successfully demonstrate, in a state or federal habeas corpus action, that his sentence was wrongly extended before he can recover damages arising in connection with the disciplinary proceedings that caused such extension. Because this pre-condition has not been met, Plaintiff's good time credit claim is not actionable at this time, (if at all).[4]

**B. Eighth Amendment Claim**

To state an actionable civil rights claim based on the Eighth Amendment, a prisoner must allege facts showing that prison officials were personally aware of some particular "excessive risk" to his health or safety, and knowingly and deliberately

[4] Although Plaintiff appears to be alleging only that he was denied procedural due process, the Court has also considered whether the facts alleged in the complaint would support a substantive due process claim. To state such a claim, Plaintiff would have to show that he was deprived of some "fundamental" liberty interest, or that Defendants' conduct was so outrageous that it "shocks the conscience" of the Court. Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc). It has already been determined that Plaintiff was not deprived of any protected liberty interest in this case. And while Defendants' conduct may be disappointing, (if their treatment of Plaintiff is accurately described in the complaint), it cannot be said that such conduct is so egregious that it shocks the conscience of the Court. Therefore, the allegations of the complaint would not support a substantive due process claim.

disregarded that risk. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). The prisoner's complaint must allege facts showing that the named defendant(s) harmed him by deliberately disregarding his "serious medical needs," (Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), forcing him to live in conditions that do not meet the minimum standards of a civilized society, (Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), using excessive physical force, (Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)), or deliberately exposing him to an obvious risk of physical harm, (Farmer v. Brennan, 511 U.S. 825, 834 (1994)). No facts showing any such mistreatment are alleged in Plaintiff's present complaint.

If the complaint accurately portrays Defendants' treatment of Plaintiff, it certainly appears that they acted harshly and unsympathetically toward him. It is hard to imagine why Defendants found it necessary to punish Plaintiff if he was able to provide a urine sample that was adequate for testing purposes. In light of Plaintiff's alleged medical problems, it is particularly difficult to understand why he would have been disciplined for not filling up the specimen cup. However, even if the facts alleged in Plaintiff's complaint are entirely accurate, Defendants' treatment of Plaintiff does not rise to the level of "cruel and unusual punishment."

The complaint does not allege that Plaintiff suffered any physical harm,[5] or that he was forced to endure any inhumane treatment or conditions. Demanding that Plaintiff produce a urine sample does not constitute mistreatment, nor does subjecting him

---

[5] The apparent absence of physical harm in this case is particularly significant, because it suggests that Plaintiff's claims might be barred under 42 U.S.C. § 1997e(e). That statute provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

to disciplinary charges. The punishment that allegedly was imposed in this case – segregated confinement, loss of a prison job, and loss of good time credits – may have been harsh, and possibly unwarranted, but none of those forms of punishment could be considered "cruel" or "unusual." See Leslie v. Doyle, 125 F.3d 1132, 1135 (7th Cir. 1997) ("[a] brief stay in disciplinary segregation... does not lead to a cognizable Eighth Amendment claim"). Thus, after carefully examining the facts alleged in the complaint, the Court finds that they simply will not support an Eighth Amendment claim.

**III. CONCLUSION**

For the reasons discussed above, the Court concludes that Plaintiff has failed to state any Bivens claim on which relief can be granted. He has not stated a Fourteenth Amendment due process claim, because he has not shown that he was deprived of any constitutionally protected liberty interest. He has also failed to state an Eighth Amendment claim, because he has not alleged any facts showing that Defendants deliberately caused any material harm to his health or safety. Because Plaintiff has failed to plead any actionable constitutional claim, the Court will recommend that this action be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). To the extent that Plaintiff is seeking relief for the loss of good time credits, his claims should be dismissed without prejudice; but all other claims should be dismissed with prejudice.

Because the action will be dismissed, Plaintiff's "Application To Proceed Without Prepayment of Fees," (Docket No. 2), must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable

for the unpaid balance of the $150 filing fee.[6] He has paid only $16.01, so he still owes $133.99. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Finally, the dismissal of this action should count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's "Application to Proceed Without Prepayment of Fees," (Docket No. 2), be **DENIED**;

2. The action be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1); and that Plaintiff's claims regarding the alleged loss of good time credits be dismissed without prejudice, and that all other claims be dismissed with prejudice;

3. Plaintiff be required to pay the unpaid balance of the Court filing fee,

---

[6] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

namely $133.99, in accordance with 28 U.S.C. § 1915(b)(2); and

4. For purposes of 28 U.S.C. § 1915(g), this action be dismissed on the grounds that it is frivolous or fails to state a claim on which relief may be granted.

Dated: October 18, 2000

SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.